By the Court.—Gildersleeve, J.
On or about September 21, 1889, the Yonkers Brass Works, a co-partnership carrying on a brass moulding business, in the city of Yonkers, executed to one Leonidas C. Jewett a chattel mortgage, to secure the payment of a promissory note for $1,200 payable in twelve months from said 21st day of September, 1889. This mortgage covered a large number of chattels in the possession of the Yonkers Brass Works. Subsequently, and on or about the 28th day of October, 1889, the said Yonkers Brass Works, being indebted to the plaintiff in the sum of $2,350, executed a chattel mortgage to, secure this indebtedness to the plaintiff, which mortgage ' covered the same chattels that were covered by the Jewett mortgage. On November 12, 1889, the said Yonkers. Brass Works executed a bill of sale of *529 all the chattels covered by the two mortgages to the defendant, and at the same time delivered to the defendant a key of the factory in which said chattels were contained, and the defendant thereupon took possession of said chattels. Both of said mortgages, to Jewett and the plaintiff, had been duly filed. On the 27th day of November, 1889, the plaintiff’s mortgage became1 due, but was not paid ; whereupon the plaintiff, on the 5th day of December, 1889, foreclosed his said mortgage, and at the sale,—which took place in front of the premises of the "Yonkers Brass Works, in which the chattels were, the key to said premises being in the possession of the defendant or its agent,—the plaintiff bought in the property, and then demanded of Mr. Perry, who represented the defendant at said sale, the key to the premises, which was in the possession of said Perry, so that plaintiff could take possession of said chattels. The defendant’s said representative, however, refused to give up the key, and declined to allow the plaintiff to take the said chattels, claiming that they belonged to the defendant. On December 10, 1889, plaintiff made both an oral- and written demand upon the defendant to deliver or give up the said chattels to the plaintiff. On December 80, 1889, the plaintiff, being unable to obtain possession of the said chattels, commenced this action for conversion. After this action was so commenced, and on the 21st day of February, 1890, and after the defendant had appeared and answered the complaint, the Jewett mortgage was assigned to one Roy; and, on or about the 24th day of February, 1890, the defendant and said Roy made an arrangement, by which the said Jewett mortgage should be considered then due. On the 28th day of February, 1890, the said Jewett mortgage was foreclosed, the chattels covered by it sold, and the defendant became the purchaser ; whereupon it served an amended answer setting up this fact as a defence. Prior to the foreclosure of plaintiff’s mortgage, a fire had taken place at the factory of the Yonkers Brass *530 Works, in which the chattels covered by the two mortgages were, and some damage done to the chattels; but the preponderance of evidence is to the effect that the value of the chattels was abundantly sufficient to cover both mortgages.
The defendant acquired no rights that can affect the issues in this action, by the purchase of the chattels in question at the sale under the foreclosure of the Jewett mortgage, which mortgage had been previously assigned to said Róy, and which, although by its terms not yet due, was considered due by virtue of the arrangement entered into between the defendant and said Roy. Whatever right of action the plaintiff had, at the time of the service of the summons and complaint herein, could not be taken away from him, without his knowledge or consent. Livermore v. Northrup, 44. N. Y. 112. The plaintiff was not a party to said agreement between Roy and defendant, and did not directly or indirectly acquiesce therein or assent thereto.
It was not claimed at the trial below,, nor upon the argument at general term, that the Yonkers Brass Works did not have a good title to the chattels in question, at the time they executed and delivered the mortgage to the plaintiff, and did not have the lawful right to execute said mortgage, subject, of course, to the prior lien of the Jewett mortgage. The subsequent bill of sale of the chattels in question by the plaintiff’s mortgagor to the defendant, although it did not specify in any way or recognize the plaintiff’s mortgage, cannot and did not deprive the plaintiff of any rights under said mortgage. The defendant’s rights to the chattels in question were acquired by the bill of sale, executed by the Yonkers Brass Works, and delivered to the defendant, with full knowledge and notice of the existence of both the Jewett mortgage and the plaintiff’s mortgage, as both had been duly filed. If defendant wished to retain possession of the property, it could hope to do so only after satisfying the claims of said mortgagees.
*531 It is conceded that the Yonkers Brass Works owed the plaintiff, at the time of the execution of said mortgage to the plaintiff, the sum of $2,850. The mortgage seems to have been in proper form; no objection has been taken to its sufficiency in that regard, nor to the regularity of its execution and filing. We quote from the mortgage as follows: “ * * * for securing the payment of the indebtedness hereinafter mentioned, and in consideration of the sum of one dollar to them ” (Yonkers Brass Works) “ duly paid ” * * * “ have bargained and sold,” etc., * * * “ upon condition that if we, the said parties of the first part,” (Yonkers Brass Works) “ shall and do well and truly pay unto the said party of the second part,” (plaintiff) “ his executors, administrators or assigns, the sum of $2,350, within 80 days from this date, then these presents shall be void,” etc. No other or further consideration than as above set forth is expressed in said mortgage, nor is any condition imposed, except the foregoing.
If the mortgage to the plaintiff was what it purports to be on its face; if it was properly foreclosed, and if there was sufficient evidence to justify the jury in believing that there was a conversion of the chattels in question by the defendant, the judgment and order appealed from should be affirmed.
But the defendant claims that there was more to the mortgage than appears upon its face. It alleges that the mortgage was given to the plaintiff by the Yonkers Brass Works “upon the express understanding and condition that the plaintiff should, within the time mentioned in said instrument, to wit, thirty days from its date, start and establish the persons composing the Yonkers Brass Works, or furnish the means for the persons to start and establish the business formerly carried on by them at said city of Yonkers; ” and that plaintiff ■has failed to comply with this condition.
The principal error assigned by defendant, and the one upon which it mainly relies for a reversal of the *532 judgment herein, is the refusal of the court below to permit the defendant to show the foregoing alleged understanding and condition. When the plaintiff was on the stand, the defendant undertook, upon cross-examination, to show a conversation that took place between the plaintiff and his mortgagors, at the time the chattel mortgage now under consideration was given. In the midst of this line of examination, he was interrupted by the court as follows:—
Court: “ I see you have a defence of that kind. The court is of opinion that the facts stated in your third defence ” (that being the defence last above indicated) “ do not constitute a defence. That would not constitute a defence, conceding that he did promise to advance the money to continue the business, if they would give him a chattel mortgage,—the promise was made without consideration.”
Defendant’s counsel: “I shall endeavor to show that the chattel mortgage was given in consideration of that promise.”
Court: “ The chattel mortgage does not contain that consideration.”
Defendant’s counsel: “It says ‘ a consideration,’ and I can show that it was different from the one mentioned in the instrument. I offer by the line of questions which I have been pursuing to prove, or attempt to prove, that apart of the consideration for the giving of the alleged chattel mortgage, under which he claims, was a promise on his part to start in business again the persons who gave the chattel mortgage, before the expiration of the time mentioned in the mortgage.” Plaintiff’s counsel: “I object to that line of proof.” Court: “ You say ‘to start in business again,’ do you ■mean by advancing more money or goods?”
Defendant’s counsel: “No; the bald statement that he was to start them up in business again, if they gave him the chattel mortgage.”
Court: “ The objection is sustained.”
*533 To this ruling, the defendant’s counsel duly excepted.
Subsequently, and after the plaintiff had rested his case, the defendant, as a part of its defence, called one Siebert, one of the members of the co-partnership known as the Yonkers Brass Works, and who signed the mortgage in question, and asked him the following questions: Q. “Was there any condition attached to the giving of that mortgage?” Q. “Was there any consideration for the giving of that mortgage other than the consideration expressed in the instrument ? ”
To both of these questions, plaintiff’s counsel objected, and the court sustained the objections, and defendant’s counsel duly excepted.
It will be observed that defendant’s counsel relied upon “the bald statement that he (plaintiff) was to start them (the Yonkers Brass Works) up in business again, if they gave him a chattel mortgage.” Defendant’s counsel would not state whether the “ start up ” was.to be by advancing money or goods. It does not appear that it was intended that the original delivery of the mortgage in question was to be conditional. The defendant’s claim is that an agreement, which was to take effect thereafter, was orally made between the plaintiff and the Yonkers Brass Works, at the time of the execution of said mortgage. The question here presented is not on the admission of parol evidence to explain, vary or contradict a written instrument, nor is it a question as to the admission of parol evidence tending to establish an independent agreement. No agreement between the plaintiff and the defendant is claimed. The defendant in this action cannot avail himself of a breach of contract, if any such existed, between plaintiff and the Yonkers Brass Works. We are of the opinion that if such an agreement existed, and was .a part of the consideration for the mortgage in question, it would not be a defence here. The Yonkers Brass Works mio'ht main-O tain a separate action for the damage, if there had been a violation of such a covenant. If the Yonkers Brass *534 Works ever had any such right, they do not appear to have transferred it to the defendant, or any other person, by assignment or otherwise; and the right, therefore, rests with them, and with them only. Lasher v. Williamson, 55 N. Y. 619; Bellows v. Folsom, 2 Robt. 138.
Even if the defendant’s claim that a part of the consideration was to start the Yonkers Brass Works in business again be correct, the contract between the plaintiff and the Yonkers Brass Works would not fail, as the rest of the consideration wras good, to-wit, the existing indebtedness; and the Yonkers Brass Works’ remedy would.be a separate action against the plaintiff, for damages. Bellows v. Folsom, supra. Defendant only claims that the agreement, if such existed, to start the Yonkers Brass Works in business again, formed “ a part of the consideration.” The rulings of the trial court, upon this question, were proper.
■ The plaintiff became entitled to the property described in said mortgage upon the 27th day of November, 1889, the day said mortgage fell due and was not paid, subject, of course, to the Jewett mortgage, not yet due. Jewett was not in possession of the property, nor was he entitled to the possession. The Yonkers Brass Works, the mortgagor, having defaulted in payment, the conditional title in the plaintiff, the mortgagee, became absolute, leaving to the mortgagor, or his assigns, only a right of redemption in equity. Campbell v. Birsch, 60 N. Y. 214, 218; Coe v. Cassidy, 72 Ib. 133, 138 ; Judson v. Easton, 58 Ib. 664; Bragelman v. Dane, 69 Ib. 69, 74. The rule is the same where the mortgagee is not in possession. See Bragelman v. Dane, supra.
There is abundant evidence to justify the conclusion that the defendant was in possession of the property at the time of the foreclosure of plaintiff’s mortgage. On the day following the maturity of plaintiff’s mortgage, the defendant actually sold a portion of the property *535 covered by plaintiff’s mortgage; the foreclosure sale under the plaintiff’s mortgage took place in front of the Yonkers Brass Works, at Yonkers; the defendant was represented at the sale by its attorney, Mr. Perry; a demand for the key was made by the plaintiff upon said Perry, who refused the plaintiff admission to the building, where the chattels were, and stated that the goods and chattels belonged to the defendant; the sale pro-ceded in front of said premises of the Yonkers Brass Works, where said goods were, and they were bought in by plaintiff, but defendant refused to allow the plaintiff to take possession or to enter said building. On December 10, 1889, plaintiff served a written demand on the defendant for said chattels; the representative of defendant refused to comply with said demand, say-' ing “you can’t have it; it belongs to the Prentiss Tool and Machine Company; I propose to hold on to it.” Plaintiff said, “ Do you mean to rob me ? ” Defendant’s representative and agent replied, “ I do not know anything about that, but we propose to hold on to that' property.”
The facts also indicate clearly a demand for the property upon the defendant, and its refusal to surrender the same,—two facts necessary to be established by the plaintiff to entitle him to maintain this action. These facts, together with the other evidence in the case, show a conversion of the property in question by the defendant. After demand, the defendant exercised dominion and control over the property, asserted its title thereto, and said to the plaintiff, “You can’t have it.” Pease v. Smith, 61 N. Y. 477, 481; Heald v. McGowan, 5 N. Y. Supp. 450, 451, 452.
If the case were free from acts of the defendant, indicating an exercise of ownership, we think the words of defendant might safely be relied on to constitute conversion. In Gillet v. Roberts, 57 N. Y. 28, Judge Earl, in the course of his opinion, says, “ It is true that to constitute a conversion a manual taking' is not nec *536 essary; but where words are relied upon, they must be uttered under such circumstances, in proximity to the property, as to show a defiance of the owner’s right, a determination to exercise dominion and control over the property, and to exclude the owner from the exercise of his rights.”
The rights to the property that defendant had, were acquired, as we have already said, with full notice of both the Jewett mortgage and plaintiff’s mortgage; and it is no hardship to the defendant to subject it to the operation of those instruments.
Several exceptions to the admission and rejection of evidence, not heretofore noticed, were taken by the defendant. They were not, however, urged upon the argument here. We have examined them, but do not consider -them of sufficient importance to require discussion here.
There is, for the reasons stated, no ground for the reversal of the judgment and-order appealed from; they must, therefore, be affirmed, with costs.
Freedman and Dugro, JJ., concurred.